UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

LEKIA COLEMAN,

                          Plaintiff,

v.                                              5:09-CV-1391
                                                (GTS/GHL)
OFFICER SHAWN HAUCK; OFFICER
SCOTT CARNS; DAVID CARLEO;
OFFICER BRIAN NOVITSKY; OFFICER
MATTHEW ERWIN; OFFICER
CHRISTOPHER LaMONTAGNE;
and LIEUTENANT JOHN IVES,

                          Defendants.
_____

APPEARANCES:                                    OF COUNSEL:

OFFICE OF ANTOINETTE L. WILLIAMS, PC            ANTOINETTE L. WILLIAMS, ESQ.
  Counsel for Plaintiff
One Wolfs Lane, Suite 9
Pelham, New York 10803


HON. MARY ANNE DOHERTY                          SHANNON T. O'CONNOR, ESQ.
Corporation Counsel for City of Syracuse        Assistant Corporation Counsel
  Counsel for Defendants
233 East Washington Street
300 City Hall
Syracuse, New York 13202

GLENN T. SUDDABY, United States District Judge

## DECISION and ORDER

         Currently before the Court, in this civil rights action filed by Lekia Coleman

("Plaintiff") against the seven above-captioned employees of the Syracuse Police Department

("Defendants"), is Defendants' motion for summary judgment.  (Dkt. No. 52.)  For the reasons

set forth below, Defendants' motion is granted in part and denied in part.

# I. RELEVANT BACKGROUND

## A. Plaintiff's Claims

Generally, in his Amended Complaint, Plaintiff alleges that, on December 13, 2008, in the City of Syracuse, Defendants violated his civil rights by unlawfully searching his vehicle and his person, falsely arresting him, and using excessive force against him. (*See generally* Dkt. No. 25 [Plf.'s Am. Compl.].) Based on these allegations, Plaintiff's Amended Complaint asserts the following seven claims: (1) a claim of excessive force against Defendants; (2) a claim of false arrest and false imprisonment against Defendants; (3) a claim of unreasonable search and seizure against Defendants; (4) a claim of violation of his equal protection rights against Defendants; (5) a claim of inadequate conditions of confinement against Defendants; (6) a due process claim against Defendants; and (7) a claim of municipal liability against the City of Syracuse arising out of the conduct of Defendants. (Dkt. No. 25, at ¶¶ 27-57.)[1] Familiarity with these claims, and the factual allegations supporting them, in Plaintiff's Amended Complaint is assumed in this Decision and Order, which is intended primarily for the review of the parties. (*Id.*)

On January 4, 2011, the Court issued a Decision and Order granting in part and denying in part Defendants' motion to dismiss Plaintiff's Amended Complaint for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6). (Dkt. No. 40.) Surviving

---

[1] In his Amended Complaint, Plaintiff also asserts the following two claims against Defendant Rural Metro Medical Services: (1) a claim of negligence; and (2) a claim of medical malpractice. However, on November 4, 2010, several months after the filing of Plaintiff's Amended Complaint, Plaintiff filed a stipulation of dismissal, voluntarily withdrawing its two causes of action against Defendant Rural Metro Medical Services. (Dkt. No. 36.) On November 5, 2010, the Court issued an Order approving the stipulation and dismissing Rural Metro Medical Services from this action. (Dkt. No. 37.) As a result, the Court need not, and does not, discuss the claims against Defendant Rural Metro Medical Services in this Decision and Order.

the Decision and Order were Plaintiff's following claims: (1) Plaintiff's Fourteenth Amendment excessive force claim against Defendants; (2) Plaintiff's Fourth Amendment false arrest claim against Defendants;[2] (3) Plaintiff's Fourth Amendment unreasonable search and seizure claim against Defendants; and (4) Plaintiff's claim for punitive damages against Defendants in their individual capacities. (*Id.*)

The Court would add only the following comment about Plaintiff's claims against various John Doe Defendants. Plaintiff filed his original Complaint in this action on December 14, 2009. (Dkt. No. 1.) The original Complaint asserted claims against, *inter alia*, "Police Officers John Doe #1-8." (*Id.*) On June 9, 2010, Plaintiff moved for leave to file an Amended Complaint. (Dkt. No. 19.) On August 31, 2010, Plaintiff was granted leave to file an Amended Complaint, which was accepted for filing. (Text Minute Entry for 8/31/2010; *see also* Dkt. No. 25.) The Amended Complaint did not assert any claims against "Police Officers John Doe #1-8"; rather, the Amended Complaint appears to name six of those John Doe Defendants, and abandon Plaintiff's claims against the remaining two John Doe Defendants. (*Id.*) However, the docket sheet still identifies "Police Officers John Doe #1-8" as Defendants separate and apart from the other named Defendants. (*See generally* Docket Sheet.) Because an amended complaint supersedes an original complaint in its entirety for all purposes (*see* N.D.N.Y. L.R. 7.1[a][4]), the Clerk of the Court is directed to amend the docket sheet to reflect the claims against "Police Officers John Doe #1-8" as having been terminated on August 31, 2010.

---

[2]     As the Court stated on page 9 of its Decision and Order of January 4, 2011, claims for false arrest and false imprisonment have identical elements in New York. (Dkt. No. 40, at 9.) As a result, the Court simply referred to those claims as one for "false arrest," when rendering its decision. (*Id.* at 10, 19.) Similarly, the Court will simply refer to those claims as one for "false arrest" in this Decision and Order.

**B.      Undisputed Material Facts**

Generally, the following facts are asserted and established by Defendants and either expressly admitted or not sufficiently denied by Plaintiff under Local Rule 7.1(a)(3). (*Compare* Dkt. No. 25, Attach. 18 [Defs.' Rule 7.1 Statement] *with* Dkt. No. 27, Attach. 6 [Plf.'s Rule 7.1 Response].)[3] In addition, while not specifically asserted by Defendants in their Rule 7.1 Statement, certain of the following facts (addressed below in notes 9, 11 and 13 of this Decision and Order) are conclusively established based on the current record.

In December 2008, Syracuse Police Officers Shawn Hauck and Scott Carrns were assigned to the Crime Reduction Team ("CRT"). In December 2008, Lieutenant John Ives was the supervisor of the CRT. Also in December 2008, Officer Christopher LaMontagne worked in the transport division for the Syracuse Police Department. The CRT dealt with quality of life issues and responded to major incidents.

On December 13, 2008, the CRT was patrolling the East side area of Syracuse, New York. This area is known to be a high crime area. Earlier in the day, Officers Hauck and Carns made an arrest involving a purchase of heroin at 100 Lombard Avenue.[4] At approximately 9:00

---

[3]      Among other things, Local Rule 7.1(a)(3) requires that the nonmoving party file a response to the moving party's Statement of Material Facts, which admits or denies each of the moving party's factual assertions in matching numbered paragraphs, and supports any denials with a specific citation to the record where the factual issue arises. N.D.N.Y. L. R. 7.1(a)(3). Any responses that do not expressly deny a fact asserted, or that do not support such a denial with a citation to the record where the factual issue arises, is effectively an admission of the fact asserted. *Id.*

[4]      (*Compare* Dkt. No. 52, Attach. 13, at ¶ 7 [Defs.' Rule 7.1 Statement, asserting fact stated, and supporting that assertion with citation to, *inter alia*, pages 25 and 26 of Defs.' Ex. F, which support assertion] *with* Dkt. No. 61, at ¶ 7 [Plf.'s Rule 7.1 Response, merely denying knowledge of fact stated, and arguing immaterially that the *other* record evidence cited by Defendants in support of that fact–a Police Incident Report regarding the preceding arrest–was not timely provided to Plaintiff during discovery])

or 9:30 p.m., Plaintiff was parked outside 100 Lombard Avenue in a Ford Expedition. Andre

Washington was a passenger in the vehicle. Officers Hauck and Carns observed the parked

vehicle with occupants in their patrol of the area. The officers circled the block and when they

returned to the area the vehicle was still parked. The officers parked behind the vehicle and

approached it. Officer Carns approached the driver's side and Officer Hauck approached the

passenger side. While speaking with Plaintiff, Defendant Carns saw, laying on the drivers side

floorboard of the vehicle directly under Plaintiff's legs, what appeared to him to be a torn piece

of "clear plastic baggy" covered in white residue and partially knotted in a fashion that is

characteristic of street-level drug packaging.[5]  After speaking with the occupants of the vehicle,

---

[5]      (Dkt. No. 52, Attach. 6, at 5-8, 10 [attaching pages "14," "15," "17," "18," and
"29" of Carns Depo. Tr.]; Dkt. No. 52, Attach. 2, at 15 [attaching Carns' Narrative Supplement,
which also swears that the NIK field test that he administered afterward indicated the presence of
cocaine]; Dkt. No. 52, Attach. 2, at 8 [attaching Carns' Evidence Submission Form].)  While
Plaintiff cites four portions of the record as evidence that his vehicle did not contain a baggie
*containing drug residue* and/or that Defendant Hauck did not view any *illegal* contraband inside
the vehicle (Dkt. No. 61, at ¶ 38), those portions do not constitute evidence from which a rational
factfinder could conclude that Defendant Carns did not *believe* he saw such a baggie.  First,
Plaintiff cites page 52 of Plaintiff's deposition transcript.  However, that page indicates only that,
when asked, "Did they find any drugs *on you* [after you were placed under arrest]?" Plaintiff
answered, "No, because there were no drugs [on me]."  (Dkt. No. 59, Attach. 1, at 22 [attaching
page "52" of Plf.'s Depo. Tr.] [emphasis added].)  Then, when asked, "Did they say that they had
found drugs somewhere [other than at the scene at Erie Boulevard]," Plaintiff answered, "I don't
know.  I don't remember that coming up."  (*Id.*)  Second, Plaintiff cites to his Certificate of
Conviction/Disposition (showing the dismissal of the charge of criminal position of a controlled
substance).  (Dkt. No. 60, Attach. 2, at 2.)  However, the fact of such a dismissal is not evidence
of a lack of probable cause.  *Mitchell v. Cnty. of Nassau*, 786 F. Supp.2d 545, 562 (E.D.N.Y.
2011) (collecting cases).  Third, Plaintiff cites his verified Amended Complaint.  (Dkt. No. 56.)
However, Plaintiff does not specify to which paragraph of his 11-page Amended Complaint he is
referring; in any event, nowhere in that Amended Complaint does Plaintiff address what
Defendant Carns could have seen in the vehicle (or even swear that no such baggie existed).
(*Id.*)  Finally, Plaintiff cites page 31 of Defendant Hauck's deposition transcript.  (Dkt. No. 59,
Attach. 2, at 7 [attaching page "31" of Hauck Depo. Tr.].)  However, that pages indicates only
that, when asked, "[D]id you observe anything suspicious or illegal when you did [looked inside
the vehicle] with the flashlight?" Defendant Hauck answered, "*Not from my side of the vehicle*,
no."  (*Id.* [emphasis added].)

the officers each asked them to exit the vehicle.[6]  Mr. Washington complied with Officer Hauck's request to exit the vehicle.  However, after being asked to exit the vehicle, Plaintiff did not immediately exit the vehicle.[7]

After he was eventually out of the vehicle,[8] Plaintiff took off running.  Officer Carns alerted Officer Hauck that the Plaintiff was running away.  Plaintiff ran east on Lombard Avenue towards Westcott Street and then to Erie Boulevard East.  While Plaintiff was running on Erie

---

[6]      (*Compare* Dkt. No. 52, Attach. 13, at ¶ 14 [Defs.' Rule 7.1 Statement, asserting fact stated, and supporting that assertion with citation to page 15 of Defs.' Ex. A, and page 15 of Defs.' Ex. E, which *directly* support fact stated, and page 4 of Defs.' Ex. A, and pages 27 and 28 of Defs.' Ex. F, which *inferentially* support fact stated] *with* Dkt. No. 61, at ¶ 14 [Plf.'s Rule 7.1 Response, denying fact stated, but supporting that denial with citation to only pages 25 and 26 of Plf.'s Ex. A, which do not support that denial, but reflect only that Plaintiff responded, "I'm not quite sure," when asked in his deposition whether Defendant Carns asked him to get out of the vehicle].)  Such a denial of knowledge is insufficient to create a genuine dispute of fact. *See, e.g., U.S. v. 15 Black Ledge Drive*, 897 F.2d 97, 102 (2d Cir.1990) (affirming a summary judgment ruling and rejecting a wife's claim of no knowledge because "a bare denial was insufficient to create a genuine triable issue" given the apparent evidence of drug activity); *Brill v. Prudential-Bache Sec., Inc.*, 84-CV-0846, 1985 WL 8037, at *3 (S.D.N.Y. July 29, 1985) ("In response to defendants' assertion that the nature of the fund was plainly disclosed in the prospectus Walden gave her, Brill states only 'I do not know whether I received any prospectus for this fund, or if so, whether I received it before or after I bought the fund.' Brill does not explain what she expects to happen between now and the time of trial that will refresh her memory. I conclude that her disclaimer of knowledge is insufficient to raise a material issue of fact with respect to disclosure of the nature of Chancellor Futures Fund II.").

[7]      (*Compare* Dkt. No. 52, Attach. 13, at ¶ 16 [Defs.' Rule 7.1 Statement, asserting fact stated, and supporting that assertion with citation to page 15 of Defs.' Ex. A, and page 15 of Defs.' Ex. E, which support fact stated] *with* Dkt. No. 61, at ¶ 16 [Plf.'s Rule 7.1 Response, denying fact stated, but supporting that denial with citation to only pages 22 and 23 of Plf.'s Ex. A, which do not support that denial, but immaterially reflect only that, after he was approached by Defendant Carns, Plaintiff was *initially* asked to produce identification and then asked a series of questions].)

[8]      The parties dispute whether Plaintiff exited the vehicle on his own (after repeatedly being asked to do so by Defendant Carns) or whether he was pulled out of the vehicle by Defendant Carns.  (*Compare* Dkt. No. 52, Attach. 13, at ¶ 17 [Defs.' Rule 7.1 Statement, citing page 15 of Defs.' Ex. E] *with* Dkt. No. 61, at ¶ 17 [Plf.'s Rule 7.1 Response, citing pages 25 and 26 of Plf.'s Ex. A].)

Boulevard, Defendant Hauck saw Plaintiff reach toward his waistband and drop to the ground

what appeared to him to be a small rock-like object.[9]  When Plaintiff reached Erie Boulevard, he

stopped running.  Defendant Hauck drew his weapon and told Plaintiff to get down on the

ground.[10]  After Plaintiff was on the ground,[11] Defendant Hauck struck Plaintiff at least once or

twice on the right side of his face, around his temple and cheekbone area, while handcuffing

him.[12]

---

[9]      (Dkt. No. 52, Attach. 7, at 11-12, 19 [attaching pages "35," "36" and "43" of
Hauck Depo. Tr.]; Dkt. No. 52, Attach. 2, at 5 [attaching Hauck's Narrative Supplement, which
also swears that the NIK field test that he administered afterward indicated the presence of
cocaine]; Dkt. No. 52, Attach. 2, at 9 [attaching Evidence Submission Form completed by
another officer].)  While Plaintiff cites his deposition testimony as evidence that he did not
possess any narcotics or illegal substances on the date of the incident (Dkt. No. 61, at ¶ 37), that
deposition transcript does not constitute evidence from which a rational factfinder could
conclude that Defendant Hauck did not *believe* he saw Plaintiff reach toward his waistband and
drop a small rock-like object.  (Dkt. No. 59, Attach. 1, at 22 [attaching page "52" of Plf.'s Depo.
Tr.].)  Rather, Plaintiff's deposition transcript merely indicates that, in response to the question,
"Did they find any drugs on you [after you were placed under arrest]?" Plaintiff answered, "No,
because there were no drugs."  (*Id.*)  That transcript says nothing about whether (1) Plaintiff had
reached toward his waistband, (2) he had dropped an object, (3) that object could have been
mistaken for cocaine, or even (4) the officers at the scene found drugs some place other than on
Plaintiff's person.

[10]     (*Compare* Dkt. No. 52, Attach. 7, at 14 [attaching page "38" of Def. Hauck's
Depo. Tr.] *with* Dkt. No. 59, Attach. 1, at 16 [attaching page "29" of Plf.'s Depo. Tr.].)

[11]     The parties dispute whether he was taken down to the ground by Defendant
Hauck (as Defendant Hauck asserts) or whether Plaintiff got down on the ground on his own (as
Plaintiff asserts).  (*Compare* Dkt. No. 52, Attach. 7, at 14-15 [attaching pages "38" and "39" of
Def. Hauck's Depo. Tr.] *with* Dkt. No. 59, Attach. 1, at 16 [attaching page "29" of Plf.'s Depo.
Tr.].)

[12]     (*Compare* Dkt. No. 52, Attach. 7, at 14-20 [attaching pages "38" through "43,"
and page "51," of Def. Hauck's Depo. Tr.] *with* Dkt. No. 59, Attach. 1, at 16-17 [attaching pages
"29" and "30" of Plf.'s Depo. Tr.].)  The parties dispute whether this was the extent of the force
used against Plaintiff force, which was caused by his attempt to get up off the ground (as
Defendant Hauck asserts), or whether Plaintiff was, without any provocation or necessity, also
punched on the left side of his face and kicked by Defendant Hauck and other Defendants (as
Plaintiff asserts).  (*Id.*)

Officers Novitsky, Erwin, and Carleo arrived on the scene in another vehicle.[13]  Plaintiff was charged with (1) criminal possession of a controlled substance in the 7th degree in violation of New York Penal Law § 220.03, and (2) resisting arrest in violation of New York Penal Law § 205.30.  After Plaintiff was taken into custody, Lieutenant Ives arrived on the scene.  Also after Plaintiff was taken into custody,[14] Officer LaMontagne arrived on the scene and transported Plaintiff to the Justice Center.  A nurse at the Justice Center instructed that he be evaluated at a hospital.  He was taken to Upstate Hospital and evaluated.  Plaintiff was issued an appearance ticket for both charges.

### C.  Parties' Briefing on Defendants' Motion for Summary Judgment

#### 1.  Defendants' Memorandum of Law in Chief

Generally, in support of their motion for summary judgment, Defendants assert the following four arguments.  (*See generally* Dkt. No. 52, Attach. 14 [Defs.' Memo. of Law].)  First, Defendants argue, Plaintiff's claims of unreasonable search and seizure should be

---

[13]  The parties dispute whether Officers Novitsky, Erwin, and Carleo arrived on the scene after Defendant Hauck's use of force or before it.  (*Compare* Dkt. No. 52, Attach. 7, at 15-16 [attaching pages "39" and "40" of Def. Hauck's Depo. Tr.] *with* Dkt. No. 59, Attach. 1, at 16-17 [attaching pages "29" and "30" of Plf.'s Depo. Tr.].)

[14]  (*Compare* Dkt. No. 52, Attach. 2, at 5 [indicating that Def. LaMontagne arrived at the same time as, or after, Def. Ives arrived on the scene] *and* Dkt. No. 52, Attach. 7, at 17 [attaching page "41" of Hauck Depo. Tr., indicating that Def. LaMontagne was not among the officers who arrived at the scene immediately after Def. Hauck gained control of Plaintiff] *and* Dkt. No. 52, Attach. 11, at 2-3 [attaching pages "108" and "109" of LaMontagne Depo. Tr., indicating that Def. LaMontagne was not listed on the Subject Resistence Report as having been present during Plaintiff's resistence, and that Def. LaMontagne's duties during the time in question was to drive the "paddywagon" to scene *after* other officers made an arrest] *and* Dkt. No. 59, Attach. 4, at 2 [attaching Subject Resistence Report, indicating that Def. LaMontagne was not present during Plaintiff's resistence] *with* Dkt. No. 59, Attach. 1, at 16 [attaching page "29" of Plf.'s Depo. Tr., indicating that Plf. responded, "I'm not quite sure" when asked ,"How many officers were around you when you were on the ground?"].)  Again, as pointed out above in note 6 of this Decision and Order, a denial of knowledge is insufficient to create a genuine dispute of fact.

dismissed because (a) Defendants possessed reasonable suspicion to briefly detain and question

Plaintiff, based on the undisputed fact that Plaintiff was present at a location at which

Defendants Hauck and Carns had made an arrest for the purchase of heroin earlier that day but

had been unable to apprehend the dealer, (b) Defendants possessed probable cause to seize

Plaintiff, based on the undisputed fact that he was present in the aforementioned location at the

aforementioned time, and he fled when Defendants attempted to question him, and (c)

Defendants possessed the authority to search Plaintiff's vehicle, based on the undisputed fact that

the search was incident to a lawful arrest of Plaintiff. (*Id*. at 10-14 [attaching pages "5" through

"9" of Defs.' Memo. of Law].)[15]

Second, Defendants argue, Plaintiff's claims of false arrest should be dismissed because

Defendants possessed probable cause to arrest and imprison Plaintiff, based on the undisputed

fact that he was present in the aforementioned location at the aforementioned time, and he fled

when Defendants attempted to question him. (*Id*. at 14-16 [attaching pages "9" through "11" of

Defs.' Memo. of Law].)[16]

Third, Defendants argue, Plaintiff's claims of excessive force should be dismissed based

on the undisputed fact that (a) Defendants believed that Plaintiff was involved in drug activity, a

serious crime known for violence, (b) Defendant Hauck did not know if Plaintiff was armed, (c)

---

[15]    In the alternative, Defendants argue that, at the very least, Plaintiff's claims of
unreasonable search and seizure against Defendants LaMontagne and Ives should be dismissed
because no admissible record evidence exists from which a rational fact finder could conclude
that they were involved in the search and seizure alleged. (*Id*. at 14 [attaching page "9" of Defs.'
Memo. of Law].)

[16]    In the alternative, Defendants argue that, at the very least, Plaintiff's claims of
false arrest against Defendants Novitsky, Erwin, Carleo, LaMontagne and Ives should be
dismissed no admissible record evidence exists from which a rational fact finder could conclude
that they were involved in the arrest of Plaintiff. (*Id*. at 15-16 [attaching pages "10" and "11" of
Defs.' Memo. of Law].)

Plaintiff refused to comply with instructions to put his hands behind his back, instead placing them under his body, and Plaintiff struggled with Defendant Hauck and attempted to stand up, and (d) Defendant Hauck used at most two strikes to Plaintiff's head to obtain control over him and put him in handcuffs. (*Id.* at 15-16 [attaching pages "10" and "11" of Defs.' Memo. of Law].)[17]

Fourth, Defendants argue that Defendants Hauck and Carns are protected from liability as a matter of law by the doctrine of qualified immunity, because it was objectively reasonable for them to believe that probable cause existed to arrest Plaintiff, and that the force used against him was necessary to subdue him, based on the circumstances described above. (*Id.* at 17-19 [attaching pages "12" through "14" of Defs.' Memo. of Law].)[18]

## 2. Plaintiff's Opposition Memorandum of Law

In response to Defendants' motion, Plaintiff has submitted two memoranda of law, the first one 14 pages in length (and filed on May 9, 2011), and the second one 14 pages in length (and filed on May 16, 2011). (Dkt. Nos. 56, 59.) The second memorandum is substantially the same as the first, and was filed due to Plaintiff's apparent difficulty in using the District's electronic case filing system while filing the first memorandum (*see* Dkt. No. 57).[19] As a result,

---

[17]     In the alternative, Defendants argue that, at the very least, Plaintiff's claims of excessive force should be dismissed as against Defendants LaMontagne and Ives because no admissible record evidence exists from which a rational fact finder could conclude that they were involved in any use of force against Plaintiff (or were even present at the scene at the time force was used against Plaintiff). (*Id.* at 17 [attaching page "12" of Defs.' Memo. of Law].)

[18]     In the alternative, Defendants argue that, at the very least, Plaintiff's claim for punitive damages should be dismissed because no admissible record evidence exists from which a rational fact finder could conclude that Defendants Hauck or Carns acted with malice or in willful disregard of Plaintiff's rights. (*Id.* at 18 [attaching page "13" of Defs.' Memo. of Law].)

[19]     Of course, bifurcated briefing on a motion is prohibited in this District, and the limit of memoranda of law is 25 pages. N.D.N.Y. L.R. 7.1(a)(1).

the Court will consider only Plaintiff's second memorandum and will direct the Clerk of the Court to strike Plaintiff's first memorandum.

Generally, in response to Defendants' motion, Plaintiff asserts the following four arguments. (*See generally* Dkt. No. 56 [Plf.'s Opp'n Memo. of Law].) First, Plaintiff argues, genuine disputes of material fact exist as to his claims of unreasonable search and seizure, because (a) admissible record evidence exists that he was merely waiting for a friend outside of an open barber shop and, in any event, being present in a high-crime area does not give an officer reasonable suspicion to detain a person, and (b) he attempted to flee the scene only after being pulled from his vehicle by Defendant Carns without reason. (*Id.* at 8-11 [attaching pages "4" through "7" of Plf.'s Opp'n Memo. of Law].)

Second, Plaintiff argues, genuine disputes of material fact exist as to his claims of false arrest, because probable cause to arrest him was not created by his mere presence in the aforementioned location at the aforementioned time, and the fact that he fled when Defendants attempted to question him (and because genuine disputes of material fact exist as to whether a baggie containing cocaine residue was present on the floor of Plaintiff's vehicle during the time in question, and whether he discarded a dime-sized rock of cocaine while attempting to flee from Defendant Hauck). (*Id.* at 11-12 [attaching pages "7" and "8" of Plf.'s Opp'n Memo. of Law].)

Third, Plaintiff argues, genuine disputes of material fact exist as to his claims of excessive force, because he has adduced admissible record evidence that (a) he complied with Defendant Hauck's order to place his hands on his head and get down on the ground, and (b) more force was used against him than one or two blows by Defendant Hauck. (*Id.* at 12-15 [attaching pages "8" through "11" of Plf.'s Opp'n Memo. of Law].)[20]

---

[20]     Plaintiff responds to Defendants' lack-of-personal-involvement argument regarding Defendants LaMontagne and Ives (*see, supra,* note 17 of this Decision and Order) by

Fourth, Plaintiff argues, based on the current record, genuine disputes of material fact exist as to whether Defendants are protected from liability by the doctrine of qualified immunity, specifically, whether it was objectively reasonable for them to believe that reasonable suspicion existed to detain and question Plaintiff, probable cause existed to arrest him, authority existed to search his vehicle, and the force in question was necessary to subdue him. (*Id*. at 15-18 [attaching pages "11" through "14" of Plf.'s Opp'n Memo. of Law].)

### 3. Defendants' Reply Memorandum of Law

Generally, in their reply, Defendants assert the following three arguments. (*See generally* Dkt. No. 62, Attach. 1 [Defs.' Reply Memo. of Law].) First, Defendants argue, no genuine dispute of material fact exists as to Plaintiff's claims of unreasonable search and seizure, and false arrest, because, *inter alia*, (a) whether or not the barber shop was open (as Plaintiff asserts) or closed (as Defendants Hauck and Carns believed) is immaterial to a determination of whether they possessed reasonable suspicious and/or probable cause under the circumstances, (b) similarly, whether or not Plaintiff actually possessed any narcotics on the floor of his vehicle or discarded narcotics while attempting to flee is immaterial to Defendants Hauck and Carns possessed reasonable suspicious and/or probable cause under the circumstances, and (c) Plaintiff has still provided no explanation for why he ran away from the scene without provocation. (*Id*. at 6-10 [attaching pages "2" through "6" of Defs.' Reply Memo. of Law].)

Second, Defendants argue, no genuine dispute of material fact exists as to Plaintiff's claims of excessive force because (a) "[t]he officers believed that the Plaintiff was involved in drug activity (a severe crime)," (b) it is undisputed that Plaintiff ran away from the scene in a

---

arguing as follows: "All named Defendants responded to the scene where Plaintiff was repeatedly struck and kicked in the face. Plaintiff is aware that he was struck by more than one officer. Therefore, it is a question of fact as to how many different defendant officers struck Plaintiff." (*Id*. at 15 [attaching page "11" of Plf.'s Opp'n Memo. of Law].)

neighborhood of high-crime activity at approximately 10:00 p.m. on a Saturday night, and (c) "[t]here was a distinct possibility that Plaintiff might have been armed." (*Id*. at 10-11 [attaching pages "6" and "7" of Defs.' Reply Memo. of Law].)

Third, Defendants argue, no genuine disputes of material fact exist as to whether Defendants Hauck and Carns are protected from liability by the doctrine of qualified immunity, specifically, whether it was objectively reasonable for them to believe that reasonable suspicion existed to detain and question Plaintiff, probable cause existed to arrest him, and the force in question was necessary to subdue him. (*Id*. at 11-12 [attaching pages "7" and "8" of Defs.' Reply Memo. of Law].)

## II.     RELEVANT LEGAL STANDARDS

### A.     Legal Standard Governing Motions for Summary Judgment

Because the parties to this action have demonstrated, in their memoranda of law, an accurate understanding of the legal standard governing motions for summary judgment, the Court will not recite that  well-known legal standard in this Decision and Order, but will direct the reader to the Court's recent decision in *Pitts v. Onondaga County Sheriff's Dep't*, 04-CV-0828, 2009 WL 3165551, at *2-3 (N.D.N.Y. Sept. 29, 2009) (Suddaby, J.), which accurately recites that legal standard.

### B.     Legal Standards Governing Plaintiff's Claims

Because the parties to this action have demonstrated, in their memoranda of law, an accurate understanding of the relevant points of law contained in the legal standards governing Plaintiff's claims in this action, the Court will not recite, in their entirety, those legal standards in this Decision and Order, which (again) is intended primarily for review by the parties. (*See generally* Dkt. No. 52, Attach. 14 [Defs.' Memo. of Law]; Dkt. No. 56 [Plf.'s Opp'n Memo. of Law]; Dkt. No. 62, Attach. 1 [Defs.' Reply Memo. of Law].)

## III. ANALYSIS

### A. Whether Plaintiff's Claims of Unreasonable Search and Seizure Should Be Dismissed

After carefully considering the matter, the Court answers this question in the affirmative with respect to any claims of unreasonable search and seizure against Defendants LaMontagne and Ives for the reasons stated in Defendants' memorandum of law. (Dkt. No. 52, Attach. 14, at 14 [attaching page "9" of Defs.' Memo. of Law].) The Court would add only two brief points.

First, Plaintiff's opposition memorandum of law does not address Defendants' argument that Defendants LaMontagne and Ives were not personally involved in any search and seizure of his vehicle and/or person; rather, Plaintiff's opposition memorandum of law focuses exclusively on whether adequate grounds existed for such a search and seizure. (Dkt. No. 59, at 8-11 [attaching pages "4" through "7" of Plf.'s Opp'n Memo. of Law].)

Second, in this District (as in many districts), when a non-movant fails to oppose a legal argument contained in a movant's memorandum of law, the movant's burden with regard to that legal argument has been lightened such that, in order to succeed with regard to that legal argument, the movant need only show the facial merit of the legal argument.[21] Here, the Court

_____

[21] *See* N.D.N.Y. L.R. 7.1(b)(3) ("Where a properly filed motion is unopposed and the Court determines that the moving party has met its burden to demonstrate entitlement to the relief requested therein...."); *see, e.g., Beers v. GMC*, 97-CV-0482, 1999 U.S. Dist. LEXIS 12285, at *27-31 (N.D.N.Y. March 17, 1999) (McCurn, J.) (deeming plaintiff's failure, in his opposition papers, to oppose several arguments by defendants in their motion for summary judgment as consent by plaintiff to the granting of summary judgment for defendants with regard to the claims that the arguments regarded, under Local Rule 7.1[b][3] ); *cf. Niles v. Nelson*, 72 F. Supp.2d 13, 22 (N.D.N.Y.1999) (McAvoy, C.J.) (holding that when a party does not respond to a portion of the opposing party's motion, they indicate that they consent to the granting of summary judgment with respect to that portion of the motion or have abandoned the claim); *Frink Am., Inc. v. Champion Road Machinery, Ltd.*, 48 F. Supp.2d 198, 209 (N.D.N.Y.1999) (McAvoy, C.J.) ("Plaintiff does not address these claims in his opposition papers, leading the Court to conclude that it has abandoned them.") (collecting cases); *see also Di Giovanna v. Beth Isr. Med. Ctr.*, 08-CV-2750, 2009 WL 2870880, at *10 n. 108 (S.D.N.Y. Sept. 8, 2009) (citing cases for proposition that plaintiff's failure to respond to argument made in summary judgment motion as to why certain claim should be dismissed constitutes abandonment of claim).

finds that Defendants' above-described argument is supported, at the very least, by facial merit. Indeed, the Court would accept that argument even if it were to subject it to the more rigorous scrutiny appropriate for a contested argument.

In addition, the Court answers this question in the affirmative with respect to any claims of unreasonable seizure against Defendants Hauck and Carns, Carleo, Novitsky and Erwin arising from Defendant Hauck and Carns' initial detention of Plaintiff (i.e., at 100 Lombard Avenue), for the reasons stated in Defendants' memoranda of law. (Dkt. No. 52, Attach. 14, at 10-14 [attaching pages "5" through "9" of Defs.' Memo. of Law]; Dkt. No. 62, Attach. 1, at 6-10 [attaching pages "2" through "6" of Defs.' Reply Memo. of Law].)  The Court would add only that, as a related ground for dismissing these claims against Defendants Carleo, Novitsky and Erwin, the Court relies on the fact that no admissible record evidence exists from which a rational fact finder could conclude that any of those three officers were even present during that initial detention.

Moreover, the Court answers this question in the affirmative with respect to any claims of unreasonable search and seizure against Hauck, Carns, Carleo, Novitsky and Erwin arising from the post-arrest search and seizure of Plaintiff's vehicle and/or the search of his person at Erie Boulevard, for the reasons stated in Defendants' memoranda of law. (Dkt. No. 52, Attach. 14, at 10-14 [attaching pages "5" through "9" of Defs.' Memo. of Law]; Dkt. No. 62, Attach. 1, at 6-10 [attaching pages "2" through "6" of Defs.' Reply Memo. of Law].)  The Court would add only two brief points.

First, the Court of course acknowledges that (1) there can be no search of a vehicle incident to a lawful arrest where the arrest was unlawful,[22] and (2) there can be no inventory search of a lawfully impounded vehicle where the vehicle was not lawfully impounded.[23] However, here, both the arrest of Plaintiff and the impounding of his vehicle were lawful, given the presence of probable cause to arrest him, as discussed below in Part III.B. of this Decision and Order.

Second, because Defendants did not argue that Defendants Carleo, Novitsky and Erwin were protected from liability, with respect to the above-described search and seizure claims, based on the doctrine of qualified immunity, the Court may not, and does not, address that alternative ground for dismissal of those claims in this Decision and Order. (Dkt. No. 52, at 17-19 [attaching pages "12" through "14" of Defs.' Memo. of Law]; Dkt. No. 62, Attach. 1, at 11-12 [attaching pages "7" and "8" of Defs.' Reply Memo. of Law].)

---

[22]    *See Arizona v. Gant*, 556 U.S. 332, 343 (2009) ("[W]e also conclude that circumstances unique to the vehicle context justify a search incident to a *lawful* arrest when it is "reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle.") (emphasis added); *Beck v. State of Ohio*, 379 U.S. 89, 91 (1964) ("The constitutional validity of the search [of the vehicle] in this case [which was incident to a lawful arrest], then, must depend upon the constitutional validity of the petitioner's arrest."); *U.S. v. Humphries*, 04-CR-0535, 2004 WL 2743432, at *4 (E.D. Pa. Nov. 29, 2004) ("As the arrest itself was unlawful, any search [of the vehicle] incident to arrest was equally unlawful, and the search incident to arrest exception to the warrant requirement of the Fourth Amendment does not apply.").

[23]    *See South Dakota v. Opperman*, 428 U.S. 364, 372 (1976) ("In applying the reasonableness standard adopted by the Framers, this Court has consistently sustained police intrusions into automobiles impounded or otherwise in *lawful* police custody where the process is aimed at securing or protecting the car and its contents.") (emphasis added); *U.S. v. Zacarias*, 07-CR-1009, 2008 WL 1766950, at *4 (C.D. Cal. Apr. 15, 2008) ("If impoundment is unlawful, an inventory search of the vehicle incident thereto is likewise unlawful."); *cf. U.S. v. Carrasco-Sanchez*, 816 F. Supp.2d 335, 343 (S.D. Miss. Sept. 8, 2011) ("Because the Government concedes that the inventory search following the impoundment of Defendants' vehicle was unlawful, the Court grants the Defendants' Motion to Suppress the 106 credit cards recovered during that search.").

Finally, the Court finds that any claims in Plaintiff's Amended Complaint that arise from an unreasonable seizure of Plaintiff's person at Erie Boulevard would be redundant of his claims of false arrest arising from the events at that location.[24]  As a result, the Court does not liberally construe Plaintiff's Amended Complaint as attempting to assert such claims.  The Court notes that, even if it were to so liberally construe Plaintiff's Amended Complaint, it would *sua sponte* strike such claims under Fed. R. Civ. P. 12(f)(1) as redundant.

For these reasons, *all* of Plaintiffs claims of unreasonable search and seizure are dismissed.

### B.    Whether Plaintiff's Claims of False Arrest Should Be Dismissed

After carefully considering the matter, the Court answers this question in the affirmative with respect to Plaintiff's claims of false arrest against Defendants LaMontagne and Ives, for the reasons stated in Defendants' memorandum of law.  (Dkt. No. 52, Attach. 14, at 15-16 [attaching pages "10" and "11" of Defs.' Memo. of Law].)  The Court would add only three brief points.

First, Plaintiff's opposition memorandum of law does not address Defendants' argument that Defendants LaMontagne and Ives were not personally involved in his arrest; rather, Plaintiff's opposition memorandum of law focuses exclusively on whether probable cause existed for that arrest.  (Dkt. No. 59, at 11-12 [attaching pages "7" and "8" of Plf.'s Opp'n Memo. of Law].)

---

[24]     *See, e.g., Pleasants v. Town of Louisa*, 847 F. Supp.2d 864, 883 (W.D. Va. 2012) ("[Plaintiff's claim of warrentless seizure] would have been duplicative of her false arrest claim . . . ."); *Morgan v. Prince George's Cnty., Md.*, 09-CV-1584, 2010 WL 2891700, at *8 (D. Md. July 20, 2010) ("If Plaintiff is claiming that Defendants' seizure of her person was an unlawful seizure of property, her claim would be duplicative of her false arrest claim."); *Asten v. City of Boulder*, 652 F. Supp.2d 1188, 1197 (D. Colo. 2009) ("[T]his claim [for false imprisonment] is repetitive of Ms. Asten's first claim for relief which asserts an "Unlawful Seizure of a Person.").

Second, as explained above, in this District, when a non-movant fails to oppose a legal argument contained in a movant's memorandum of law, the movant's burden with regard to that legal argument has been lightened such that, in order to succeed with regard to that legal argument, the movant need only show the facial merit of the legal argument. *See, supra,* Part III.A. of this Decision and Order. Here, the Court finds that Defendants' above-described argument is supported, at the very least, by facial merit. Indeed, the Court would accept that argument even if it were to subject it to the more rigorous scrutiny appropriate for a contested argument. The Court notes that, based on the current record, it is undisputed that Defendants LaMontagne and Ives did not even arrive on the scene until *after* Plaintiff was taken into custody. *See, supra,* Part I.B. of this Decision and Order.

Moreover, the Court answers this question in the affirmative with respect to Plaintiff's claims of false arrest against Defendants Carleo, Novitsky and Erwin, for the reasons stated in Defendants' memorandum of law. (Dkt. No. 52, Attach. 14, at 15-16 [attaching pages "10" and "11" of Defs.' Memo. of Law].) The Court would add only two brief points.

First, as he did with regard to Defendants' lack-of-personal-involvement argument concerning Defendants LaMontagne and Ives, Plaintiff did not respond to Defendants' lack-of-personal-involvement argument concerning Defendants Carleo, Novitsky and Erwin. (Dkt. No. 59, at 11-12 [attaching pages "7" and "8" of Plf.'s Opp'n Memo. of Law].) As a result, in order to succeed on that argument, Defendants need show only that it is supported by facial merit, which they have done.

Second, in the alternative, the Court finds that, even if it were to subject this argument to the more rigorous scrutiny appropriate for a contested motion, it would find that that argument has merit. Granted, at his deposition, Plaintiff testified that Defendants Carleo, Novitsky and

Erwin kicked and punched Plaintiff while handcuffing him.[25]  However, Plaintiff also testified that those kicks and punches were *preceded* by his compliance with orders to get down on the ground and put his hands on his head.[26]  Simply stated, according to Plaintiff's own version of events (as well as the entirety of the other evidence in the record), his arrest by Defendant Hauck was complete *before* Defendants Carleo, Novitsky and Erwin could be said to have used force in effecting that arrest.  More important, for the reasons set forth in the remainder of this section, the Court finds there was no false arrest in which  Defendants Carleo, Novitsky and Erwin could have participated.

Finally, the Court answers this question in the affirmative with respect to Plaintiff's claims of false arrest against Defendants Hauck and Carns, for the reasons stated in Defendants' memoranda of law.  (Dkt. No. 52, Attach. 14, at 15-16 [attaching pages "10" and "11" of Defs.' Memo. of Law]; Dkt. No. 62, Attach. 1, at 6-10 [attaching pages "2" through "6" of Defs.' Reply Memo. of Law].)  The Court would add only two points.

---

[25]      (Dkt. No. 59, Attach. 1, at 16 [attaching page "29" of Plf.'s Depo. Tr., stating that all of the officers then present "proceeded to start kicking me and handcuffing me in the same motion or hitting me"].)

[26]      (Dkt. No. 59, Attach. 1, at 16 [attaching page "29" of Plf.'s Depo. Tr., stating, "One officer had his weapon out and he ordered me to freeze and get on the ground. . . .  I did [so]. . .  He told me [next] to . . . put my hands on top of my head. . . .  I did [so]. . . ."]; *see also* Dkt. No. 52, Attach. 2, at 5 [attaching Narrative Supplement stating, in pertinent part, that "I ordered his arms behind his back and told him that he was under arrest," and electronically signed by Def. Hauck]; Dkt. No. 52, Attach. 2, at 6 [attaching New York State Arrest Report, signed by Def. Hauck, bearing ID Number 0353]; Dkt. No. 52, Attach. 2, at 15 [attaching Narrative Supplement stating, in pertinent part, that "Officer Hauck eventually was able to place Coleman into custody," and electronically signed by Def. Carns]; Dkt. No. 52, Attach. 2, at 16 [attaching Subject Resistance Report stating, in pertinent part, that "I ordered his arms behind his back and told him that he was under arrest," and signed by Def. Hauck, bearing ID Number 0353]; Dkt. No. 52, Attach. 7, at 14-17 [attaching pages "38" through "41" of Hauck Depo. Tr., stating that, when Def. Hauck repeatedly told Plaintiff to "get on the ground" and took him to the ground, no other officers were present].)

First, based on the current record, it is undisputed that Plaintiff was found present in a high-crime area (indeed, an area in which Defendants Carns and Hauck had made an arrest for illegal drug activity earlier that day), and then fled from Defendants Carns and Hauck. Granted, generally, an individual's mere presence in a high-crime area accompanied by unprovoked flight from police is, alone, not sufficient to support probable cause to arrest that individual for illegal drug activity.[27] However, here, additional grounds existed to give Defendants Hauck and Carns probable cause to arrest Plaintiff.[28] In addition to the fact that Plaintiff was present at the address regarding which Defendants Hauck and Carns had made a drug arrest earlier that day, and the fact that Plaintiff delayed in exiting his vehicle upon being asked to do so, there are the fact of what Defendant Carns observed lying on the floor of Plaintiff's vehicle, and the fact of what Defendant Hauck observed falling from Plaintiff's waistband.

More specifically, based on the current record, there is no genuine dispute that (1) while speaking with Plaintiff, Defendant Carns saw, laying on the drivers side floorboard of the vehicle

---

[27]  *See, e.g., Marshall ex rel. Gossens v. Teske*, 284 F.3d 765, 770-71 (7th Cir. 2002) (deciding that presence in a high crime area accompanied by improperly provoked flight is not sufficient to support probable cause for arrest that individual for illegal drug activity); *U.S. v. Wadley*, 83 F.3d 108, 112, n.19 (5th Cir. 1996) ("[S]tanding alone, a suspect's attempt to walk away or flee from a police officer is insufficient to create probable cause [to arrest that suspect for illegal drug activity], *even if the suspect flees in a high crime area.*") (emphasis in original); *cf. U.S. v. Hughes*, 898 F.2d 63, 64–65 (6th Cir. 1990) (finding that an arrest for illegal drug activity was supported by probable cause where the suspect was present in an area known for drug trafficking, *engaged in events consistent with drug trafficking*, fled after seeing the police, *and tried to conceal the subject of her activities*) (emphasis added).

[28]  The Court notes that there is no record evidence from which a rational factfinder could find that Plaintiff's flight was provoked. While Plaintiff testified at his deposition that Defendant Carns pulled him out of his vehicle, he also testified, "To be honest I don't know [why I took off running]," when asked the specific question, "And why did you take off running?" (Dkt. No. 52, Attach. 5, at 9-10 [attaching pages "25" and "27" of Plf.'s Depo. Tr.].) More important, it is undisputed that any such conduct by Defendant Carns (if it occurred) was preceded by Plaintiff's delay in exiting his vehicle upon being asked to do so. *See, supra,* note 7 of this Decision and Order.

directly under Plaintiff's legs, what appeared to him to be a torn piece of "clear plastic baggy" covered in white residue and partially knotted in a fashion that is characteristic of street-level drug packaging, and (2) while Plaintiff was running on Erie Boulevard, Defendant Hauck saw Plaintiff reach toward his waistband and drop to the ground what appeared to him to be a small rock-like object. *See, supra,* notes 5 and 9 of this Decision and Order. Whether or not the baggie found on Plaintiff's floor and the object he dropped to the ground later testified negative for cocaine in a laboratory, and/or were found to be of insufficient qualities to warrant prosecution, is of no consequence to Plaintiff's claims of false arrest: any such facts would do nothing to negate the fact that the observations of Defendant Carns and Defendant Hauck, when combined with the other undisputed facts described above, gave them probable cause to arrest Plaintiff for criminal possession of a controlled substance in the 7th degree in violation of New York Penal Law § 220.03.

Second, because Defendants never moved for dismissal of Plaintiff's false arrest claim against Defendant Carns on the alternative ground that he lacked personal involvement in that arrest (e.g., due to an absence from the scene at Erie Boulevard), the Court may not, and does not, address that issue in this Decision and Order.

For these reasons, *all* of Plaintiff's claims of false arrest against Defendants are dismissed.

**C. Whether Plaintiff's Claims of Excessive Force Should Be Dismissed**

After carefully considering the matter, the Court answers this question in the affirmative with respect to Plaintiff's claims of excessive force against Defendants LaMontagne and Ives, for the reasons stated in Defendants' memorandum of law. (Dkt. No. 52, Attach. 14, at 17 [attaching page "12" of Defs.' Memo. of Law].) The Court would add only that, while Plaintiff

briefly opposes Defendants' argument that no admissible record evidence exists establishing the personal involvement of those two Defendants in the use of force against him, he does so only obliquely, arguing that "[a]ll named Defendants responded to the scene where Plaintiff was repeatedly struck and kicked in the face." (Dkt. No. 59, at 15 [attaching page "11" of Plf.'s Opp'n Memo. of Law].) Conspicuously absent from Plaintiff's argument is any citation to record evidence establishing that Defendants LaMontagne and Ives arrived at the scene *before* the use of force. (*Id.*) This failure to cite such evidence is fatal to Plaintiff's excessive force claims against those two Defendants, given the undisputed fact that they arrived on the scene only after Plaintiff was taken into custody. *See, supra,* Part I.B. of this Decision and Order.

However, the Court answers this question in the negative with respect to Plaintiff's claims of excessive force against Defendants Hauck, Carns, Carleo, Novitsky, and Erwin, for the reasons stated in Plaintiff's opposition memorandum of law. (Dkt. No. 59, at 12-15 [attaching pages "8" through "11" of Plf.'s Opp'n Memo. of Law].) The Court would add only that, because Defendants never moved for dismissal of Plaintiff's excessive force claim against Defendant Carns based on his lack of personal involvement in that use of force (e.g., due to an absence from the scene at Erie Boulevard), the Court may not, and does not, address that issue in this Decision and Order. Should the parties agree that Defendants Carns was not personally involved in the alleged use of force in question, they may stipulate to the dismissal of Plaintiff's excessive force claim against him pursuant to Fed. R. Civ. P. 41(a)(1)(A)(ii).

For these reasons, Plaintiff's claims for excessive force against Defendants LaMontagne and Ives are dismissed; but Plaintiff's claims for excessive force against Defendants Hauck, Carns, Carleo, Novitsky, and Erwin survive Defendants' motion for summary judgment.

**D.    Whether, in the Alternative, Defendants Hauck and Carns Are Protected from Liability as a Matter of Law by the Doctrine of Qualified Immunity**

After carefully considering the matter, the Court answers this question in the affirmative with respect to Plaintiff's claims against Defendants Hauck and Carns for unreasonable search and seizure and false arrest, for the reasons stated in Defendants' memoranda of law, and for the reasons set forth above in Parts III.A. and III.B. of this Decision and Order. (Dkt. No. 52, Attach. 14, at 17-19 [attaching pages "12" through "14" of Defs.' Memo. of Law]; Dkt. No. 62, Attach. 1, at 11-12 [attaching pages "7" and "8" of Defs.' Reply Memo. of Law].)

However, the Court answers this question in the negative with respect to Plaintiff's remaining claims of excessive force against Defendants Hauck and Carns, for the reasons stated in Plaintiff's opposition memorandum of law, and the reasons set forth above in Part III.C. of this Decision and Order. (Dkt. No. 59, at 15-18 [attaching pages "11" through "14" of Plf.'s Opp'n Memo. of Law].)

The Court would add only that it also rejects Defendants' alternative argument that, at the very least, Plaintiff's claim for punitive damages should be dismissed, because no admissible record evidence exists from which a rational fact finder could conclude that Defendants Hauck or Carns acted with malice or in willful disregard of Plaintiff's rights. (Dkt. No. 52, Attach. 14, at 18 [attaching page "13" of Defs.' Memo. of Law].) When the admissible record evidence currently before the Court is viewed in the light most favorable to Plaintiff, genuine disputes of material fact exist as to whether Defendants Hauck or Carns acted with malice or in willful disregard of Plaintiff's rights with regard to the surviving claims in this action, described above in Part III.C. of this Decision and Order.

**ACCORDINGLY**, it is

**ORDERED** that the Clerk of the Court shall amend the docket sheet to (1) reflect the claims against "Police Officers John Doe #1-8" as having been terminated on August 31, 2010, and (2) strike from the docket Plaintiff's first opposition memorandum of law (Dkt. No. 56); and it is further

**ORDERED** that Defendants' motion for summary judgment (Dkt. No. 52) is **<u>GRANTED</u> in part** and **<u>DENIED</u> in part**; and it is further

**ORDERED** that the following claims in Plaintiff's Amended Complaint are **<u>DISMISSED</u>**: (1) *all* of Plaintiff's claims of unreasonable search and seizure against Defendants; (2) *all* of Plaintiff's claims of false arrest against Defendants; and (3) Plaintiff's claims for excessive force against Defendants LaMontagne and Ives; and it is further

**ORDERED** that the following claims **<u>SURVIVE</u>** Defendants' motion for summary judgment: Plaintiff's claims for excessive force against Defendants Hauck, Carns, Carleo, Novitsky and Erwin; and it is further

**ORDERED** that counsel are directed to appear on NOVEMBER 8, 2012 at 11:00 a.m. in chambers for a pretrial conference, at which counsel are directed to appear with settlement authority, and in the event that the case does not settle, trial will be scheduled at that time. Plaintiff is further directed to forward a written settlement demand to defendants no later than October 19, 2012, and the parties are directed to engage in meaningful settlement negotiations prior to the 11/8/12 conference. In the event that counsel find that settlement is unlikely, if counsel would prefer to participate in this pretrial conference via telephone conference for the limited purpose of scheduling trial, counsel should make that request in writing.

Dated: September 26, 2012
      Syracuse, New York

Hon. Glenn T. Suddaby
U.S. District Judge