UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

LEKIA COLEMAN,

                           Plaintiff,

v.                                              5:09-CV-1391 (GTS/ATB)

SHAUN HAUCK; and BRIAN NOVITSKY,

                           Defendants.
_____

| APPEARANCES: | OF COUNSEL: |
|---|---|
| ANTOINETTE L. WILLIAMS, P.C.<br>  Counsel for Plaintiff<br>One Wolfs Lane Suite 9<br>Pelham, NY 10803 | ANTOINETTE L. WILLIAMS, ESQ. |
| HON. MARY ANNE DOHERTY<br>Corporation Counsel for City of Syracuse<br>  Counsel for Defendants<br>300 City Hall<br>Syracuse NY 13202 | SHANNON T. O'CONNER, ESQ. |

GLENN T. SUDDABY, United States District Judge

## DECISION and ORDER

      Currently pending before the Court, in this civil rights action filed by Lekia Coleman ("Plaintiff") against City of Syracuse Police Officers Shaun Hauck and Brian Novitsky ("Defendants") asserting a claim of excessive force, is Plaintiff's post-trial motion for judgment as a matter of law pursuant to Fed. R. Civ. P. 50(b). (Dkt. No. 119.) For the reasons set forth below, Plaintiff's motion is denied.

I.    **RELEVANT BACKGROUND**

    A.    **Relevant Procedural History**

Because the parties have, in their memoranda of law, demonstrated an accurate understanding of this action's relevant procedural history, including the trial that occurred in this action between January 28, 2013, and January 30, 2013, the Court will not recite that history in this Decision and Order, which is intended primarily for the review of the parties. Rather, the Court will proceed directly to a description of the parties' briefing on Plaintiff's post-trial motion for judgment as a matter of law.

    B.    **Parties' Briefing on Plaintiff's Motion**

Generally, in his post-trial motion for judgment as a matter of law pursuant to Fed. R. Civ. P. 50(b), Plaintiff argues that the evidence presented at trial was "legally sufficient" for a jury to find in his favor with regard to his claim of excessive force against Defendants. (Dkt. No. 118, at 4, 11 [Plf.'s Memo. of Law]; Dkt. No. 119, at ¶ 4 [Plf.'s Atty. Affid.].) In support of this argument, Plaintiff points to trial evidence regarding each factor relevant to determining a claim of excessive force, including the following: (1) evidence that Plaintiff suffered a right orbital floor fracture and a comminuted left zygomatic fracture, resulting in significant pain, headaches and impaired vision; (2) evidence that the officers inconsistently asserted that Plaintiff resisted arrest; (3) evidence that there was no relationship between the need and the amount of force because Plaintiff was unarmed, was cooperative once he stropped running, and was handcuffed on the ground when the force was used; (4) evidence that at least four officer responded to the scene of arrest, eliminating any perceived threat to officer safety; and (5) evidence that Defendant Hauck made no attempt to temper the severity of the force by using pain compliance techniques such as pressure points. (*See generally* Dkt. No. 118 [Plf.'s Memo. of Law].)

Generally, in response to Plaintiff's motion, Defendants asserts two alternative arguments. (Dkt. No. 122, Attach. 1 [Defs.' Memo. of Law].)  First, Defendants argue, Plaintiff is procedurally barred from making a post-trial motion for judgment as a matter of law pursuant to Fed. R. Civ. P. 50(b), because (1) such a motion is merely a "renewal" of a trial motion for judgment as a matter of law pursuant to Fed. R. Civ. P. 50(a), and (2) he failed to make a trial motion for judgment as a matter of law pursuant to Fed. R. Civ. P. 50(a), thus requiring his motion show "manifest injustice" (which is not the case here). (*Id*.)  Second, Defendants argue, in the alternative, Plaintiff's motion is unsupported by a showing of cause, because (1) it applies the incorrect legal standard (arguing that there was sufficient evidence to support a rational verdict in Plaintiff's favor, rather than that there was insufficient evidence to support a rational verdict in Defendants' favor), and (2) any event, the motion improperly asks the Court to weigh the credibility of the witnesses. (*Id.*)

Plaintiff has failed to file a reply to Defendants' response, and the deadline for that reply has expired. (Text Notice filed Feb. 28, 2013 [setting deadline for reply as March 25, 2013].)

## II.    GOVERNING LEGAL STANDARDS

### A.    Legal Standard Governing Motions for Judgment Notwithstanding the Verdict Pursuant to Fed. R. Civ. P. 50(b)

Rule 50(b) of the Federal Rules of Civil Procedure provides, in pertinent part, as follows:

> If the court does not grant a motion for judgment as a matter of law made under Rule 50(a), the court is considered to have submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion. No later than 28 days after the entry of judgment—or if the motion addresses a jury issue not decided by a verdict, no later than 28 days after the jury was discharged—the movant may file a *renewed motion* for judgment as a matter of law and may include an alternative or joint request for a new trial under Rule 59.

Fed. R. Civ. P. 50(b) (emphasis added).

As a result, a prerequisite for a motion for a post-trial motion for a judgment as a matter of law (also known as a motion for judgment notwithstanding the verdict) is a trial motion for judgment as a matter of law.  *See* Fed. R. Civ. P. 50 Advisory Committee Note (1963) ("A motion for judgment notwithstanding the verdict will not lie unless it was *preceded by a motion for a judgment* as *a matter of law* made at the close of all the evidence.") (emphasis added); Fed. R. Civ. P. 50 Advisory Committee Note (1991) ("A post-trial motion for judgment can be granted only on grounds advanced in the pre-verdict motion.");  *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 486, n.5 (2008) ("A motion under Rule 50(b) is not allowed unless the movant sought relief on similar grounds under Rule 50(a) before the case was submitted to the jury."). The principal purpose of the requirement that any such motion be made before the case is submitted to the jury is "to assure the responding party an opportunity to cure any deficiency in that party's proof." *Lore v. City of Syracuse*, 670 F.3d 127, 152 (2d Cir. 2012) (quoting *Piesco v. Koch*, 12 F.3d 332, 340 [2d Cir. 1993].)

Despite this mandate, the Second Circuit has held that a motion pursuant to Fed. R. Civ. P. 50(b) may be granted by a district court where doing so is necessary to prevent "manifest injustice." *Kirsch v. Fleet Street, Ltd.*, 148 F.3d 149, 164 (2d Cir. 1998) ("As to any issue on which proper Rule 50 motions were not made, [a judgment as a matter of law] may not properly be granted by the district court, or upheld on appeal, or ordered by the appellate court unless that action is required in order to prevent manifest injustice."); *accord, Lore*, 670 F.3d at 153; *Cordius Trust v. Kummerfeld*, 331 F. App'x 810, 811 (2d Cir. 2009).

"[M]anifest justice" exists only when a jury's verdict is "wholly without legal support." *Pahuta v. Massey–Ferguson, Inc.*, 170 F.3d 125, 129 (2d Cir. 1999) ("We may overlook such a

default in order to 'prevent a manifest injustice' in cases where a jury's verdict is wholly without legal support.") (internal quotation marks omitted); *accord, U.S. S.E.C. v. Stamoulis*, 350 F. App'x 499, 500 (2d Cir. 2009); *Clergeau v. Local 1181, Amalgamated Transit Union, AFL–CIO*, 162 F. App'x 32, 34 (2d Cir. 2005); *Rothstein v. Carriere*, 373 F.3d 275, 291 (2nd Cir. 2004); *Henry v. Dinelle*, 10-CV-0456, 2013 WL 936584, at *3 (N.D.N.Y. Mar. 8, 2013) (Suddaby, J.).

Finally, as for the legal standard governing a motion for a post-trial motion for a judgment as a matter of law that *has* been preceded by a trial motion for judgment as a matter of law, a district court may to enter a judgment as a matter of law against a party on an issue where "there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue." *Cobb v. Pozzi*, 363 F.3d 89, 101 (2d Cir.2004) (quoting *Nadel v. Isakkson*, 321 F.3d 266, 271-72 [2d Cir. 2003].)

More specifically, a court may set aside the verdict pursuant to Fed. R. Civ. P. 50(b) only if there is "'such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture, or such an overwhelming amount of evidence in favor of the movant that reasonable and fair minded men could not arrive at a verdict against [the moving party].'" *Cross v New York Transit Auth.*, 417 F.3d 241, 248 (2d Cir. 2005) (quoting *Song v. Ives Labs., Inc.*, 957 F.2d 1041, 1046 [2d Cir. 1992].) In short, a Fed. R. Civ. P. 50(b) motion must be denied "'unless the evidence is such that, without weighing the credibility of the witnesses or otherwise considering the weight of the evidence, there must be but one conclusion as to the verdict that reasonable men could have reached.'" *Cross*, 417 F.3d at 248.

**B.     Legal Standard Governing Claims of Excessive Force Under the Fourth Amendment**

The Fourth Amendment provides "[t]he right of the people to be secure in their persons . . . against unreasonable searches and seizures. U.S. Const. IV. "Determining whether the force used to effect a particular seizure is 'reasonable' under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Bradley v. Rell*, 703 F. Supp. 2d 109, 119 (N.D.N.Y. 2010) (Suddaby, J.) (quoting *Graham v. Connor*, 490 U.S. 386, 396 [1989]).

Application of the 'reasonableness' standard in this context requires careful attention to the facts and circumstances of each particular case, including the following seven factors: (1) the extent of the injury suffered; (2) the severity of the crime at issue; (3) whether the suspect is actively resisting or attempting to evade arrest by flight; (4) the need for the application of force; (5) the relationship between the need and the amount of force used; (6) the threat reasonably perceived by the defendant; and (7) any efforts made to temper the severity of the forceful response. *See e.g. Graham*, 490 U.S. at 396; *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 123 (2d Cir.2004); *Sullivan v. Gagnier*, 225 F.3d 161, 165 (2d Cir. 2000); *Noel v. Artson*, 641 F.3d 580, 586 (4th Cir. 2011). "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Phelps v. Szubinski*, 577 F. Supp. 2d 650, 661 (E.D.N.Y.2008) (quoting *Graham*, 490 U.S. at 396).

**III.     DISCUSSION**

After carefully considering the matter, the Court finds that Plaintiff's motion must be denied for each of the two alternative reasons offered in Defendant's opposition memorandum of law: (1) because Plaintiff never made a trial motion for judgment as a matter of law, he is procedurally barred from prevailing on a post-trial motion for judgment as a matter of law unless he can show "manifest injustice," which he cannot; and (2) in the alternative, Plaintiff's motion is unsupported by a showing of cause, because it both applies the incorrect legal standard and improperly asks the Court to weigh the credibility of the witnesses. *See, supra,* Part I.B. of this Decision and Order.  The Court would add only three points.

First, as the Court explained above in Part II.A. of this Decision and Order, in order to show "manifest injustice," Plaintiff must show that the jury verdict in favor or Defendants was "wholly without legal support." *Pahuta*, 170 F.3d at 129 (quoting *Varda, Inc. v. Ins. Co. of N. Am.*, 45 F.3d 634, 638 [2d Cir. 1995]).  Plaintiff has utterly failed to meet this high burden (both for the reasons stated by Defendants, and the reasons stated by the Court below in its third point).

Second, by arguing that his motion should be granted because the evidence presented at trial was "legally sufficient" for a jury to find in his favor, Plaintiff has so fundamentally misunderstood the legal standard governing his motion as to render his motion frivolous. *See, supra,* Part I.B. of this Decision and Order.  The issue actually presented by Plaintiff's motion is whether there was insufficient evidence to support a rational verdict in Defendants' favor. *See, supra,* Part II.A. of this Decision and Order.

Third, and finally, even if the motion could somehow be liberally construed as attempting to apply the correct legal standard, the motion would be denied, because it (1) improperly asks the Court to weigh the credibility of the witnesses, and (2) it simply ignores the substantial evidence adduced at trial in Defendants' favor.

More specifically, carefully considering the evidence adduced at trial regarding the seven factors to be considered under the Fourth Amendment analysis (*see, supra,* Part II.B. of this Decision and Order), the Court acknowledges that (with regard to the first factor) Plaintiff suffered a significant injury, including a right orbital floor fracture and a comminuted left zygomatic fracture. Similarly, the Court acknowledges that (with regard to the seventh factor) Officer Hauck testified that he hit Plaintiff "[a]s hard as [he] could." (Dkt. No. 116, at 177.) However, setting aside the lack of evidence regarding a more extensive injury, and the presence of evidence regarding the cessation of the use of force, there is substantial evidence in Defendants' favor regarding each of the remaining five factors.

For example, regarding the second factor, the Court strongly disagrees with Plaintiff's contention that "possessing a single rock of crack cocaine is not a severe crime." Instead, the Court considers the criminal possession of a controlled substance to be serious crime worthy of thorough investigation and prosecution. *See generally United States v. Fields*, 113 F.3d 313, 323 (2d Cir. 1997) ("[B]agging a large quantity of cocaine crack is a serious crime"); *United States v. Fernandez-Dilone*, 668 F. Supp. 245, 249 (S.D.N.Y. 1987) ("Narcotics trafficking is an extremely serious crime and one that often involves violence."). In addition, Plaintiff's decision to run from police heightens the seriousness of the crime, potentially leading police to believe that he was involved in even greater violations of the criminal code.

Regarding the third factor, Plaintiff admits that he ran from the officers. (Dkt. No. 115, at 97.) Additionally, if the jury credited Defendant Hauch's testimony as true, it may have reasonably concluded that Plaintiff continued to resist arrest by failing to comply with Defendant Hauck's orders to get on the ground, requiring Defendant Hauck to physically take Plaintiff to the ground. (Dkt. No. 116, at 186.)

Regarding the fourth factor, Defendant Hauck's testimony supports a reasonable conclusion that he had a real need to apply force. Defendant Hauck testified that he twice lost sight of Plaintiff as he fled, allowing the possibility that he obtained a weapon from his clothing or elsewhere. (Dkt. No. 116, at 161, 180.) He further testified that, after catching Plaintiff, he observed Plaintiff reaching for his waistband with both hands. (Dkt. No. 116, at 183.) He further testified that, after taking Plaintiff to the ground, he again observed Plaintiff reaching, refusing to give up his hands to be handcuffed. (Dkt. No. 116, at 177, 186.) Finally, he testified that only then did he punch Plaintiff in the face.

Regarding the fifth factor, a jury, if it credited Defendant Hauck's testimony, could have reasonably concluded that Defendant Hauck administered force only as a last resort to obtain Plaintiff's hands, and ceased the use of that force immediately upon doing so. As a result, a jury have reasonably concluded that there was a direct relationship between the need to apply force and the amount of force used.

Regarding the sixth factor, a jury, if it credited Defendant Hauck's testimony, could have reasonably concluded that Defendant Hauck reasonably feared for his safety when Plaintiff reached for his waistband and refused to give up his hands. A jury could also have reasonably

9

concluded that, during this struggle, Defendant Hauck was the only officer at the scene.[1]  Finally, it is important to note that it was undisputed at trial that the struggle occurred after dark only blocks away from the location of a reported homicide earlier in the day.

For each of these numerous alternative reasons, the Court denies Plaintiff's motion.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for judgment notwithstanding the verdict pursuant to Fed. R. Civ. P. 50(b) (Dkt. No. 119) is **DENIED**.

Dated: June 5, 2013
       Syracuse, New York

_____
Hon. Glenn T. Suddaby
U.S. District Judge

---

[1] Defendant Hauck testified that officers arrived approximately 30 to 60 seconds after he took Plaintiff to the ground.  (Dkt. No. 116, at 161-62.)